UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

SHAWN ROBINSON,

      Plaintiff,

-vs-                    No. 05-2251

WARDEN CHAMBERS,
OFFICER D. ATWOOD,
OFFICER CUNNINGHAM, )

      Defendants.

### MEMORANDUM OPINION AND ORDER

Before the court are the defendants' summary judgment motion [28] and the plaintiff's response [32] and the defendants' reply [35].

### Background

Plaintiff is an inmate, currently incarcerated at Big Muddy River Correctional Center, who brought his complaint pursuant to 42 U.S.C. §1983, alleging the defendant violated his rights under the First and Eighth Amendments, when he used unconstitutional force against Plaintiff in retaliation for Plaintiff accusing another officer of using racial slurs. Specifically, Plaintiff alleges the defendant forcefully pushed him against a glass wall, causing him to injure his hand and elbow. Defendant denies any retaliatory motive and asserts the undisputed material facts establish that any force employed was *de minimus* and was for a legitimate penological purpose. Defendants argue that the undisputed facts will establish that Plaintiff has no basis for his allegations that the actions of defendant Cunningham were in retaliation for reporting another officer. Defendant Cunningham is entitled to summary judgment on the entire claim.

### Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

### Statement of Undisputed Material Facts[1]

1. The incident at issue in this case took place on July 10, 2005 on the 3 - 11 shift. (Plaintiff's Deposition, p. 7, l. 17 - p. 8, l. 7; Cunningham Affidavit).
2. When Plaintiff reported to work in the R4 housing unit, Defendant Cunningham asked Plaintiff twice if he had anything unrelated to his job assignment. (Plaintiff's Dep., p. 8, l. 9 - p. 9, l. 3 13; Cunningham Affidavit).
3. After the second time Defendant Cunningham asked the question, Plaintiff said, "no, you can shake me down if you want to." (Plaintiff's Dep., p. 8, l. 24 - p. 9, l. 3; Cunningham Affidavit).
4. Plaintiff was ordered by Defendant Cunningham to get up against the glass and put his hands on the glass. (Plaintiff's Dep., p. 9, l. 5 - 9; Cunningham Affidavit).
5. Plaintiff alleges he did not comply with the [first] order. (Plaintiff's Dep., p. 9, l. 8 - 15). Plaintiff states in his response [35], he was not given time to comply with the second.
6. Plaintiff alleges he was pushed against the glass. (Plaintiff's Dep., p. 9, l. 16 - 17).
7. Plaintiff alleges his left little finger and right elbow were hurt when he tried to catch himself to keep his balance against the glass. (Plaintiff's Dep., p. 9, l. 19 - 24). In his response [33], the plaintiff states it is undisputed that he tried to keep his balance when

---

[1]Plaintiff's Statement of Disputed Facts are not numbered, but instead are delineated by bullet points The court has reviewed each statement made by the plaintiff [35] and finds that most of his disputed facts are immaterial and many of his disputed facts are arguments, questions and often based on assumptions.

   he was "pushed" against the glass. Additionally, Plaintiff now asserts that he was in the "proper" position for a shakedown, which does not include leaning against the glass. *Id.*
8.  Defendant Cunningham only placed one hand on Plaintiff's shoulder and then patted him down[2]. (Cunningham Affidavit; Plaintiff's Dep., p. 11, l. 4 - 8).
9.  Plaintiff does not remember if Defendant Cunningham "pushed" him with one or two hands. (Plaintiff's Dep., p. 10, 19 - 22).
10.  Plaintiff was standing approximately 1 1/2 feet from the glass wall when he alleges he was pushed into the glass. (Plaintiff's Dep., p. 10, l. 23 - p. 11, l. 3).
11.  Plaintiff did not say anything to Defendant Cunningham after he alleges he was pushed against the glass by Defendant Cunningham. (Plaintiff's Dep., p. 11, l. 9 - 19).
12.  Plaintiff did not complain to Defendant Cunningham about any injury. (Cunningham Affidavit).
13.  Plaintiff alleges he did not put in a request to see someone in the Health Care Unit until two days after the incident. (Plaintiff's Dep., p. 15, l. 19 - p. 16, l. 2).
14.  Plaintiff admits his elbow was only bruised, but alleges his finger was dislocated. (Plaintiff's Dep., p. 16, l. 3 - 21).
15.  Plaintiff had no problems with Defendant Cunningham prior to this incident. (Plaintiff's Dep., p. 17, l. 14 - 20).
16.  Plaintiff does not know why he did not ask to be seen in the Health Care Unit until two days after the incident. (Plaintiff's Dep., p. 18, l. 9 - 14).
17.  Plaintiff admits he did not put in the sick call slip that his finger was dislocated. (Plaintiff's Dep., p. 18, l. 15 - p. 19, l. 2).
18.  Plaintiff believes that Cunningham and "everybody" was after him because he reported C/O Atwood. (Plaintiff's Dep., p. 20, l. 5 - 6).
19.  Defendant Cunningham was not present when Plaintiff reported C/O Atwood. (Plaintiff's Dep., p. 20, l. 10 - 11).

---

[2]Plaintiff argues that Defendant Cunningham's statement in his affidavit about placing one hand on plaintiff's shoulder during the shakedown differs from his incident report and statement to Sergeant Thompson, in which the defendant allegedly used two fingers against Plaintiff's shoulder instead of his hand. In response, Defendant Cunningham asserts that the incident report does not mention that he placed his hand on Plaintiff's shoulder or back; however, the report states he shook down Plaintiff, and that Plaintiff complied. Defendants argue that these statements are consistent with Defendant Cunningham's Affidavit (see Defendant's Undisputed Facts No. 8) and the court agrees. Additionally, defendants assert that the statements to Sgt. Thompson Plaintiff attributes to Defendant Cunningham were, in fact, made by C/O Hunt in his incident report, who was a witness to the incident (see attachment [35]). Defendant Cunningham asserts that he is not disputing Plaintiff's allegation that the defendant placed at least one hand on Plaintiff during the shake down. The court finds that any minor dispute among witnesses about the number of fingers or placement of Defendant Cunningham's hand is immaterial to the determination of whether any unconstitutional force was used.

20. Plaintiff believes Defendant Cunningham assaulted him because he was friends with C/O Atwood. (Plaintiff's Dep., p. 20, l. 21 - 24).
21. Plaintiff does not know whether Defendant Cunningham knew he had reported C/O Atwood. (Plaintiff's Dep., p. 21 - l. 1 - 5).
22. Plaintiff had previously brought non-work items to his work assignment. (Plaintiff's Dep., p. 8, l. 14 - 18).
23. Plaintiff alleges he asked Correctional Officer Thompson who was in the control unit for call the Health Care Unit. (Plaintiff's Dep., p. 13, l. 16 - p. 14, l. 7).
24. The Health Care Unit personnel would not let him be seen that night. (Plaintiff's Dep., p. 13, l. 22 - p. 14, l. 7).
25. Plaintiff does not know why he alleges he did not put in a sick call request until two days after the incident. (Plaintiff's Dep., p. 18, l. 9 - 14).
26. In his alleged sick call request, Plaintiff just said he "wanted to see the nurse about [his] hand." (Plaintiff's Dep., p. 18, l. 15 - p. 19, l. 5).

### Immaterial Facts

1. Plaintiff asserts that Defendant Cunningham wrote a ticket for insolence only after Sgt. Thompson was informed of the alleged incident, nor did Defendant Cunningham make any mention of the ticket when Plaintiff was accompanied to the cell house by Sgt. Thompson.[3]
2. In this "fact" Plaintiff appears to be arguing the validity of his ticket.[4]

### Discussion and Conclusion

An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 1999), *citing Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 283-4, 97 S.Ct. 568 (1977). Acts which are constitutional can become unconstitutional if done in retaliation for the exercise of a constitutionally protected right. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 1999)(citations omitted). "This is so even if the adverse action does not independently violate the Constitution." A claim for retaliation is stated when a prisoner sets forth "a chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000)(*quoting Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

---

[3]This fact is immaterial to the issue of whether any force used against Plaintiff was unconstitutional. Additionally, it is immaterial to the issue of whether the force was used in retaliation for Plaintiff complaining about another officer.

[4]Whether his ticket was warranted or not is immaterial to the determination of whether Defendant Cunningham used unconstitutional force on Plaintiff or whether that force was in retaliation for his complaints about another officer.

Here, the plaintiff claims that the defendants retaliated against him when he accused another officer of using racial slurs. Inmates have a right protected by the First Amendment to raise matters of public interest or concern, including complaints about prison procedures or policies. *Brookins v. Kolb*, 990 F.2d 308, 313 (7th Cir. 1993). That protection does not extend to communication regarding personal matters. *Id.* The requirement that the speech be of a matter of public concern has not been abandoned simply because the person making the speech is an inmate. *Sasnett v. Litscher*, 197 F.3d 290, 292 (7th Cir. 1999). Just because speech relates to prisons, does not automatically made it a matter of public concern. *Spiegla v. Hull*, 731 F.3d 928, 936 (7th Cir. 2004).

Plaintiff alleges in his complaint that on June 8, 2005, Correctional Officer Atwood called Plaintiff and an inmate co-worker "stupid ass niggers." (Complaint, p. 4). Plaintiff complained to the shift commander and, subsequently, Internal Affairs about the incident (Complaint, p. 4). Plaintiff alleges that this complaint was protected speech, and that when Defendant Cunningham used force against him on July 10, 2005, it was in retaliation for his protected speech. Assuming for purposes of his order only that the verbal complaint about a single incident of an officer using a racial epithet was protected speech, Plaintiff still cannot prevail on his claim. In order for Plaintiff's complaint about Correctional Officer Atwood to be a motivation for Defendant Cunningham's alleged retaliation against Plaintiff, Defendant Cunningham would have to have known about the complaint. Plaintiff believes that Defendant Cunningham and "everybody" was after him because he reported C/O Atwood (Fact 18) and because he believes Defendant Cunningham retaliated because he is a friend of Correctional Officer Atwood (Fact 20). However, Plaintiff admits that Defendant Cunningham was not present when he made the accusations against Officer Atwood (Fact 19) and admits he really does not know if Defendant Cunningham knew he had reported Correctional Officer Atwood (Fact 21). Plaintiff has no factual basis for his belief that Defendant Cunningham's actions on July 10, 2005, nearly one month after the alleged incident between Plaintiff and Correctional Officer Atwood, were in any way motivated by Plaintiff's protected speech. Additionally, Defendant Cunningham had a legitimate penological reason to search Plaintiff on July 10, 2005. Plaintiff admits he had previously brought non-work-related items to his work assignment (Fact 22), the very type of things sought by Defendant Cunningham in his search (Fact 2). This legitimate reason for the search of July 10, 2005, combined with Plaintiff's inability to prove Defendant Cunningham had any knowledge of Plaintiff's protected conduct, entitles Defendant Cunningham to summary judgment on the First Amendment retaliation claim.

The Eighth Amendment to the Constitution prohibits the "unnecessary and wanton infliction of pain" on prisoners. *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) *citing Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976). However, not all force used by correctional officials on an inmate constitutes an unconstitutional use of force. The inquiry in a prison force case is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson* at 6-7. Moreover, while significant injury is not required, an Eighth Amendment claim cannot ordinarily be predicated on a *de minimus* use of physical force,

provided that the use of force is not a sort "repugnant to the conscience of mankind." *Hudson* at 9-10.

   Plaintiff alleges that on July 11, 2005, Defendant Cunningham ordered Plaintiff to get against the glass wall so he could be searched for possible contraband, but before Plaintiff could comply with the order, Defendant Cunningham "shoved plaintiff hard" against the wall, causing him to injure his "left wrist and forearm." (Complaint, p. 4). Plaintiff admits he had previously brought non-work-related items to his job assignment (fact 22), and that he was ordered to be searched for non-work-related items by Defendant Cunningham (Facts 2 and 3). He also admits that when ordered to stand against the glass (Fact 4), he merely raised his arms and did not comply with the order (Fact 5). Plaintiff admits he was standing only one and one-half feet away from the glass wall at the time he was "pushed" (Fact 10), and that the injury occurred when he tried to catch himself to keep his balance against the glass (Fact 7). Contrary to his allegations in his complaint that his left wrist and forearm were hurt, during his deposition, he alleged he bruised his right elbow and dislocated his left little finger (Fact 14). Plaintiff also does not know how many hands Defendant Cunningham used to execute this "hard shove." (Fact 9). In fact, Defendant Cunningham only placed one hand on Plaintiff's shoulder, patted him down and never pushed him into the glass at all (Fact 8). Plaintiff admits he never complained to Defendant Cunningham that he was injured (Facts 11 and 12). Additionally, Plaintiff alleges he asked Correctional Officer Thompson, the Control Officer to call the Health Care Unit for him (Fact 23); however, the Health Care Unit personnel would not let him be seen that night (Fact 24). Plaintiff has no explanation for why he alleges he did not put in a sick call request until two days after the incident (Facts 13 and 25). He also admits when he filled out the alleged sick call slip, he did not tell the Health Care Unit personnel the nature of his injury, just that he "wanted to see the nurse about [his] hand." (Facts 17 and 26). Assuming, *arguendo*, that the incident occurred as Plaintiff alleges, there is nothing about the incident described by Plaintiff, the injury itself, nor Plaintiff's admitted vagueness about the injury when seeking health care, that could lead any reasonable trier of fact to conclude that this one-handed "shove" was anything more than a *de minimus* use of force for the purpose of causing Plaintiff to comply with a lawful order. Such a use of force does not trigger Eighth Amendment protections, and Defendant Cunningham is entitled to summary judgment in his favor.

**It is therefore ordered:**

1. **Pursuant to Fed. R. Civ. Pro. Rule 56, the defendant's motion for summary judgment is granted [d/e 39]. The clerk of the court is directed to enter judgment in favor of the defendant and against the plaintiff. Any pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.**
2. **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-**

meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).

Enter this   28th   day of February 2008.

s\Harold A. Baker
_____
Harold A. Baker
United States District Judge